ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **KARLA CARRILLO RUSSE**<br><br>Recurrente<br><br>v.<br><br>**IN HOUSE CLOSETS &<br>MORE INTERPRISES, INC.**<br><br>Recurrido | KLRA202300520 | **REVISIÓN**<br>procedente del<br>**Departamento<br>de Asuntos del<br>Consumidor**<br><br>Querella Núm.:<br>**SAN-2022-<br>0012399**<br><br>Sobre:<br>Ley Núm. 5 de 23<br>de abril de 1973<br>(Ley Orgánica de<br>DACO) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Cintrón Cintrón, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 19 de diciembre de 2023.

Comparece ante nos, mediante *Recurso de Revisión Judicial*, y por derecho propio, la señora Karla Carrillo Russe (señora Carrillo Russe o parte recurrente) y nos solicita que revisemos la *Resolución Nunc Pro Tunc* emitida el 1 de septiembre de 2023 y notificada el 5 de septiembre de 2023, por el Departamento de Asuntos del Consumidor (DACo). Mediante la misma, el DACo declaró *Con Lugar* la querella presentada por la señora Carrillo Russe y decretó la resolución del contrato de arrendamiento de obra suscrito entre las partes, en cuanto a las puertas objeto de la querella. Además, ordenó a la parte querellada, el señor David Alemán Echevarría h/n/c In House Closets & More Enterprises, Inc. (In House Closets o parte recurrida) restituir a la señora Carrillo Russe la suma de $3,585.00 y a esta última devolver las siete (7) puertas de madera concernidas.

Por las razones que expondremos a continuación, se confirma la resolución recurrida.

**I.**

Según surge del expediente, en febrero de 2023, la señora Carrillo Russe contrató a In House Closets para la manufactura e instalación de siete (7) puertas de madera con sus marcos, una puerta corrediza de cristal para un closet del pasillo y un closet en panel hidrófugo, todo por el precio de $5,900.00. Posteriormente, la señora Carrillo Russe notó que las puertas instaladas tenían varios desperfectos, como comején en una de las puertas, por lo que notificó a In House Closets para el correspondiente arreglo, pero no tuvo éxito. Lo anterior provocó que esta contratara a otra compañía para atajar el problema del comején.

A raíz de lo anterior, el 19 de octubre de 2022, la señora Carrillo Russe presentó una *Querella* en el DACo contra In House Closets. En su querella solicitó el reembolso del costo total de las puertas, $5,900.00, así como daños y perjuicios.

El 19 de octubre de 2022, In House Closets fue notificado de la querella instada en su contra, pero no contestó la misma oportunamente. El 22 de febrero de 2023, el DACo celebró la vista administrativa a la cual comparecieron ambas partes por derecho propio.

El 24 de febrero de 2023, el DACo emitió la *Resolución* original. Mediante dicho dictamen, emitió las siguientes determinaciones de hechos:

1. El 23 de febrero de 2022, la parte querellante contrató a la parte querellada para la instalación de 7 puertas de madrea, un "walk-in closet" y una puerta corrediza en aluminio y cristal para el "closet" del pasillo, por el precio de $5,900.00.

2. El costo de las 7 puertas se detalló en la factura por la suma de $3,360.00.

3. El 19 de abril de 2022, la parte querellada realizó la instalación de las puertas de madera en el apartamento de la parte querellante.

4.  El 26 de abril de 2022, la parte querellante contactó a la parte querellada para informarle que las puertas estaban defectuosas, ásperas y con bolsas de aire en la pintura. Además, una de ellas también tenía arenilla que resultó ser comején, el cual le corrió por todo el baño. Algunas de las tablillas del closet también quedaron viradas.

5.  La parte querellada contrató con la parte querellante para la fabricación e instalación de dos puertas de "closet" adicionales. No obstante, éstas fueron entregadas e instaladas sin ningún contratiempo.

6.  La parte querellada acudió a la residencia de la parte querellante para intentar arreglar las puertas y para las tablillas. Sin embargo, no pudo resolver el problema del comején, ni arreglar la pintura de las puertas.

7.  La parte querellada pudo corregir las tablillas viradas en el "walk-in closet".

8.  El marco de una de las puertas ubicada en el cuarto "master" también se infectó con comején.

9.  La parte querellada indicó que volvería en julio de 2022, para corregir lo que faltaba en las puertas. Sin embargo, no volvió. Dicha parte no contestaba las llamadas ni los mensajes de texto.

10. En agosto la parte querellante arregló la puerta que tenía comején con otro contratista lo cual tuvo un costo de $225.00. La fumigación para el comején de la puerta le costó a la parte querellante, la suma de $195.00     La     puerta     nueva     costo $870.00.

11. En el edificio donde vive la parte querellante había otros pisos y apartamentos con problema de comején.

12. El 19 de octubre de 2022, la parte querellante radicó una querella ante este Departamento. En la misma, solicitó la devolución de su dinero.

Conforme lo anterior, la agencia determinó que la señora Carrillo Russe cumplió con su obligación de pagar el precio por las siete (7) puertas de madera, la puerta de cristal y aluminio blanco y el closet en el panel hidrófugo. Sin embargo, el DACo expresó que In House Closets no cumplió su obligación de realizar la obra según lo pactado. Ello, toda vez que las puertas tenían defectos en la pintura, y las tablillas del *walk in* closet resultaron viradas. A pesar de que la señora Carrillo Russe le reclamó en varias ocasiones a la entidad para que le corrigiera los mencionados desperfectos, In House

Closets acudió al apartamento una (1) vez y solo logró corregir la situación que presentaba las tablillas.

Además, el DACo expuso lo siguiente:

Es preciso resaltar, que la parte querellante no logró establecer que el problema del comején viniera con la puerta instalada por la parte querellada, ya que surgió de la prueba que había comején en otros pisos y apartamentos del condominio. Por lo tanto, la partida solicitada por la parte querellante a dichos efectos no procede.

Ahora bien, quedó establecido que la parte querellada incumplió al actuar sin pericia al realizar la obra de las puertas a pesar de haber tratado de corregir las mismas posteriormente. Ante dichas circunstancias, procede la devolución de los $3,360 que la parte querellante pagó por las puertas, y los $225.00 que ésta pagó por la reparación al remover el material instalado.

El 20 de marzo de 2023, In House Closets presentó *Moción de Reconsideración de Resolución.* Solicitó se reconsiderara la determinación o, en la alternativa, se enmendara para incluir que, al restituirse el dinero a la señora Carrillo Russe, esta debía devolver las puertas. La señora Carrillo Russe se opuso a lo anterior oportunamente. El 11 de mayo de 2023, la señora Carrillo Russe instó una *Moción para Solicitar el Cumplimiento y la Ejecución de la Resolución.* En su comparecencia, le requirió al DACo que ordenara la ejecución y el cumplimiento de la resolución original, de conformidad con la Regla 30 del Reglamento 8034 del DACo.

El 1 de septiembre de 2023, el DACo dictó la *Resolución Nunc Pro Tunc* que hoy revisamos.[1] Mediante esta, sostuvo su dictamen inicial, más añadió la siguiente expresión: "Además, recibido el (sic) la suma antes referida, la parte querellante devolverá a la parte querellada las 7 puertas de madera objeto de la querella de epígrafe".

---

[1] El 28 de septiembre de 2023, la señora Carrillo Russe instó una oposición, en la cual expresó que la *Resolución Nunc Pro Tunc* consideró tardíamente la moción de reconsideración de In House Closets y que esta menoscabó sus derechos ya adquiridos mediane una resolución original que ya era final y firme. Añadió que la agencia enmendó la resolución original a los efectos de disponer que esta debía devolver las siete (7) puertas de madera objeto de la querella y que ello constituía un error de derecho porque afectaba sus derechos sustantivos. No surge del expediente contestación de la agencia a dicha moción.

Inconforme con la determinación del DACo, la señora Carrillo Russe acude ante este Tribunal de Apelaciones y alega que el foro administrativo cometió los siguientes errores:

> Erró la Juez Administrativa de DACo y abusó de su discreción al emitir una *Resolución Nunc Pro Tunc* para corregir un error de derecho, lo cual es contrario a derecho.

> Erró la Juez Administrativa de DACo y abusó de su discreción al considerar la moción de reconsideración presentada por la parte recurrida, luego de que la resolución original adviniera final y firme.

> Erró la Juez Administrativa de DACo y abusó de su discreción al no actuar de conformidad con las disposiciones procesales que rigen nuestro ordenamiento y al violentar el debido proceso de ley de la parte recurrente.

El 13 de noviembre de 2023, In House Closets presentó su *Oposición a Solicitud de Recurso de Revisión.* Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Las decisiones administrativas están cobijadas por una presunción de legalidad y corrección. Por ello, merecen deferencia por parte de los tribunales apelativos. *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 128 (2019); *Otero v. Toyota,* 163 DPR 716, 727 (2005). Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un abuso de discreción. El criterio rector es la razonabilidad de la agencia recurrida. *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 892 (2008).

De igual forma, al momento de evaluar una decisión administrativa, los tribunales deben tomar en consideración, no solo la especialización y experiencia de la agencia sobre las controversias que tuviera ante sí, sino que también deben distinguir entre cuestiones relacionadas a la interpretación de las leyes - donde los tribunales son los especialistas - y aquellos asuntos propios para la

discreción o pericia administrativa. *García Reyes v. Cruz Auto Corp.*, supra, pág. 892; *Super Asphalt v. AFI y otros*, 206 DPR 803, 805 (2021); *Capó Cruz v. Jta. Planificación*, 204 DPR 581 (2020).

Al aplicar el criterio de razonabilidad y deferencia, se ha dispuesto por la jurisprudencia que los foros apelativos no deben intervenir con las determinaciones de hechos que las agencias formulan, si las mismas están sostenidas por evidencia sustancial que obre en el expediente administrativo. Bajo dicho escenario, los foros apelativos deberán sostenerlas. Sec. 4.5 de la Ley Núm. 38-2017, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9601 *et seq.* (LPAU). Véase también, *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75 (2000).

Del mismo modo, las conclusiones de derecho y las interpretaciones que realizan las agencias sobre la ley que le corresponde administrar, a pesar de ser revisables en toda su extensión, deben sostenerse a nivel apelativo si estas son razonables, aunque haya alguna otra interpretación igualmente adecuada. *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 DPR 269, 283 (2000); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 133 (1998).

Ahora bien, debemos puntualizar que -debido a que las resoluciones de los organismos administrativos se presumen correctas- quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente para derrotar la presunción que estas poseen. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). De lo anterior, surge claramente que la carga probatoria le corresponde a la parte recurrente, por lo que, de incumplir con ella la decisión administrativa deberá ser respetada por el foro apelativo.

**B.**

La Ley Núm. 5 del 23 de abril de 1973, según enmendada, mejor conocida como la *Ley Orgánica del Departamento de Asuntos*

*del Consumidor*, 3 LPRA sec. 341 *et seq.* (Ley Núm. 5 del 23 de abril de 1973), creó al DACo para eliminar el estado de indefensión y desamparo en el cual estaban sumidos los consumidores. Conforme a su Exposición de Motivos, este ente administrativo posee el deber de ventilar y adjudicar las querellas que los consumidores presenten, fiscalizar el cumplimiento de las leyes que tienen como objetivo proteger a esta parte de la población, así como educar y concederle al consumidor representación adecuada en la defensa de sus derechos.  (Véase la Exposición de Motivos de la Ley Núm. 5 del 23 de abril de 1973, *supra*).  Por lo tanto, el DACo tiene como norte el vindicar e implantar los derechos del consumidor. Art. 3 de la Ley Núm. 5 del 23 de abril de 1973, *supra*, 3 LPRA sec. 341b.

En concordancia con el propósito perseguido por la referida disposición de ley, el DACo tiene la autoridad de atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía.  Art. 6(c) de la Ley Núm. 5 del 23 de abril de 1973, según enmendado, 3 LPRA sec. 341e(c).

## C.

En Puerto Rico existe el principio de la libertad de contratación. El contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. Artículo 1230 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9751.

El contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Existe consentimiento por el concurso de la oferta y de la aceptación

cuando el oferente recibe la aceptación. Artículos 1237 y 1238 del Código Civil de Puerto Rico, 31 LPRA secs. 9971 y 9772.

Es a partir del perfeccionamiento de un contrato, que las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven de éste, ello conforme a la buena fe, al uso y a la ley. *Álvarez v. Rivera*, 165 DPR 1, 19 (2005). Cuando un contrato es legal, válido y carente de vicios del consentimiento, constituye la ley entre las partes y debe cumplirse a tenor de éste. *Íd.* La persona que de cualquier modo contraviene el tenor de su obligación, debe indemnizar los daños y perjuicios causados. Artículo 1158 del Código Civil, 31 LPRA sec. 9303.

En los contratos con prestaciones recíprocas se encuentra implícita la facultad de resolver extrajudicialmente el contrato por falta de cumplimiento de una obligación principal, conforme a las siguientes reglas:

> (a) la parte incumplidora debe estar en mora;
> (b) debe requerirse a la parte incumplidora, bajo apercibimiento de resolver el contrato total o parcialmente, que cumpla su obligación, incluyendo el daño moratorio;
> (c) las prestaciones parcialmente cumplidas no se resuelven y quedan firmes;
> (d) la resolución opera al momento de vencer el requerimiento;
> (e) la resolución produce el efecto previsto en este Código para la condición resolutoria cumplida;
> y
>
> (f) puede reclamarse el cumplimiento y el resarcimiento de daños.
>
> […]
>
> Artículo 1255 del Código Civil, 31 LPRA sec. 9823.

El negocio jurídico puede ser ineficaz debido a su invalidez o de su inoponibilidad, o por causa sobreviniente en los casos de resolución, revocación o rescisión. La rescisión es el negocio jurídico bilateral, o el unilateral previsto en la ley o en el propio negocio jurídico, en virtud del cual este queda privado de efecto. La resolución, revocación o rescisión de un negocio jurídico no afecta

los derechos de terceras personas que han obrado de buena fe y no han dado su consentimiento a aquellas. Artículos 339 y 340 del Código Civil de Puerto Rico, 31 LPRA sec. 6302 y 6303. La sentencia de invalidez de un negocio jurídico obliga a las partes a restituir, con sus frutos y productos, lo recibido en virtud del negocio jurídico. La restitución se rige por las disposiciones relativas a las relaciones reales de buena o de mala fe, según sea el caso. Artículo 346 del Código Civil de Puerto Rico, 31 LPRA sec. 6316.

En lo pertinente, por el contrato de obra o "contrato de arrendamiento de obra o de ejecución de obra", el contratista se obliga, sin estar subordinado al comitente, a realizar una obra material o intelectual por el pago de un precio. Artículo 1367 del Código Civil de Puerto Rico, 31 LPRA sec. 10251. Véase, además, *Pacheco v. Estancias*, 160 DPR 409, 428 (2003); *Constructora Bauzá, Inc. v. García López*, 129 DPR 579, 592 (1991). El contratista está obligado, entre otras cosas, a ejecutar la obra según lo convenido y los conocimientos que exige el arte, la ciencia o la técnica correspondiente para la ejecución. Artículo 1375 (a) del Código Civil de Puerto Rico, 31 LPRA sec. 10272.

**III.**

En el presente recurso, nos corresponde determinar si el DACo incidió al dictar la *Resolución Nunc Pro Tunc* objetada. Analizados los hechos particulares de la acción a la luz del derecho aplicable, concluimos que el DACo no erró en su determinación. Nuestra función se circunscribe a una cuestión de Derecho; determinar si constituyó un error de forma subsanable mediante una enmienda *nunc pro tunc* el añadir en el dictamen de la agencia que, como parte de la resolución del contrato en cuestión, por el cual la parte recurrida debe devolverle a la parte recurrente la suma de $3,585.00, la parte recurrente debe a su vez restituir las siete (7) puertas de madera objeto de la querella de epígrafe.

En síntesis, la parte recurrente alega que la *Resolución Nunc Pro Tunc* no procedía porque esta corrigió un error de derecho. Argumenta que lo anterior menoscabó sus derechos adquiridos cuando se dictó la Resolución original. Añade que dicho acto tuvo el efecto de conceder tardíamente la solicitud de reconsideración presentada por la parte recurrida. En ese sentido, arguye que el DACo no consideró la moción de reconsideración mencionada dentro del término aplicable de 15 días. Por otro lado, la parte recurrida está de acuerdo con el pronunciamiento impugnado, por entender que, a través de este, el DACo enmendó un error de forma.

Según expuesto, ante la inobservancia de una de las partes de un contrato, la parte perjudicada puede solicitar el cumplimiento de la obligación o su resolución. Asimismo, cuando se declara la nulidad de un contrato, las partes quedan obligadas a la restauración del estado primitivo anterior de las cosas. *Bosques Soto v. Echevarría Vargas*, 162 DPR 830, 836-837 (2004); *Sánchez Rodríguez v. López Jiménez*, 116 DPR 172 (1985) (Nota al calce 2). La consecuencia natural de este acto es que se deben devolver las prestaciones objeto del contrato.

En la presente causa, somos del criterio que la enmienda *nunc pro tunc* en cuestión no menoscabó los derechos sustantivos de la parte recurrente. Esta se limitó a explicar en que consistía la resolución del contrato. Nótese que, desde la *Resolución* del 24 de febrero de 2023, la agencia ordenó resolver el convenio de arrendamiento de obra suscrito entre las partes en cuanto a las puertas concernidas. Así, una vez resuelto el contrato, el remedio a concederse es el que las partes se restituyan mutuamente las contraprestaciones. Esto es, la parte recurrida restituirá a la parte recurrente la suma de $3,585.00 y la parte recurrente devolverá las aludidas siete (7) puertas de madera.

**IV.**

Por los fundamentos antes expuestos, se confirma la *Resolución Nunc Pro Tunc* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

La jueza Rivera Marchand disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones